UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAPCORP INVESTMENTS LLC,

Petitioner,

-v-

TFS INTERNATIONAL LLC, as ATG Investments LLC,

Respondents.

26-cv-2022 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Petitioner Capcorp Investments LLC has petitioned pursuant to the Federal Arbitration Act ("FAA") to enforce a foreign arbitral award (the "Award") issued in Capcorp's favor against Respondent TFS International LLC in CMA Arbitration Procedure No. 780. (Dkt. No. 1.) The arbitration was held before the São Paulo Chamber of Conciliation, Mediation and Arbitration – CIESP/FIESP in São Paulo, Brazil. (*See id.*) The Award was issued on October 9, 2024, clarified first on December 17, 2024, and again on March 11, 2025, and made final on March 27, 2025. (*See id.*; Dkt. No. 30 (Capcorp 56.1) ¶¶ 8–14.) TFS has been served with the summons, notice of petition, and petition in this action (*see* Dkt. No. 11) and has received actual notice of this proceeding (*see* Dkt. No. 27, Ex. A) but has not appeared, and the Clerk of Court has noted TFS's default and has issued a certificate of default against it (Dkt. No. 14). After the issuance of the certificate of default against TFS, Capcorp moved for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55 (Dkt. No. 16) and then for summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56 (Dkt. No. 28).

After reviewing Capcorp's filings and the underlying Award, the Court finds that enforcement of the Award is proper but also finds that Capcorp must recalculate and further explain the amounts listed in its petition before the Court is able to enter judgment enforcing the Award.

## I. Discussion

### A. Panama Convention

The FAA provides that federal district courts have original jurisdiction over proceedings to enforce foreign arbitral awards under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), incorporated as Chapter 2 of the FAA, or the Inter-American Convention

on International Commercial Arbitration (the "Panama Convention"), incorporated as Chapter 3 of the FAA. *See* 9 U.S.C. §§ 203, 302. There is no substantive difference between the two Conventions, and authority regarding one Convention is applicable to the other. *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petrol. Corp.*, 40 F.4th 56, 62 n.2 (2d Cir. 2022). Both the New York Convention and the Panama Convention "evince a 'pro-enforcement bias.'" *Corporación Mexicana de Mantenimiento Integral, S. de R.L de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 105 (2d Cir. 2016) ("*Pemex*") (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2d Cir. 1997)).

The Award here falls under the Panama Convention because the arbitration agreement underlying the Award arises from a commercial relationship, involves property located abroad or has a reasonable relation with Brazil, and the majority of the parties to the underlying arbitration agreement are citizens of countries that have ratified the Panama Convention and are member states of the Organization of American States. *See* 9 U.S.C. §§ 202, 302, 305. (*See also* Dkt. No. 7-4 (Arbitration Agreement) at 3–4; Dkt. No. 7-5 (Share Purchase Agreement) at 3–4.)

Under the Panama Convention, "a district court must enforce an arbitral award rendered abroad unless a litigant satisfies one of the seven enumerated defenses" set forth in Article V of the Convention. *Pemex*, 832 F.3d at 106 (emphasis omitted); *see* 9 U.S.C. § 207 ("[A court with jurisdiction] shall confirm [an award under the Panama Convention] unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."). The seven enumerated defenses in Article V of the Panama Convention are:

> (1) "That the parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made";
>
> (2) "That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense";
>
> (3) "That the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those

> not submitted to arbitration, the former may be recognized and executed";
>
> (4) "That the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the law of the State where the arbitration took place";
>
> (5) "That the decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made";
>
> (6) "That the subject of the dispute cannot be settled by arbitration under the law of that State [in which recognition and execution of the arbitral decision is requested]"; or
>
> (7) "That the recognition or execution of the decision would be contrary to the public policy (*ordre public*) of that State [in which recognition and execution of the arbitral decision is requested]."

Panama Convention art. V, Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245.

Because the Award was not rendered in the United States, the Award is a foreign arbitral award over which the Court has secondary rather than primary jurisdiction. *See CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017) (explaining that American courts have primary jurisdiction over domestic arbitral awards as well as nondomestic arbitral awards made in the United States and have secondary jurisdiction over foreign arbitral awards). The domestic provisions of the FAA regarding the confirmation and vacatur of arbitral awards accordingly do not apply in this case, and the Court "may refuse enforcement [of the Award] only on the limited grounds specified in Article V" of the Panama Convention. *Id.* (quoting *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 115 n.1 (2d Cir. 2007)); *cf. Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005) (emphasizing that the Second Circuit has "explicitly declined to read into the New York Convention additional FAA defenses").

Because the FAA uses the same term—"confirm"—in different contexts, the U.S. Court of Appeals for the Second Circuit has encouraged district courts "to take care to specify explicitly the type of arbitral award the district court is evaluating (domestic, nondomestic, or foreign), whether the district court is sitting in primary or secondary jurisdiction, and, accordingly, whether the action seeks confirmation of a domestic or nondomestic arbitral award under the district court's primary jurisdiction or enforcement of a foreign arbitral award under its secondary jurisdiction." *CBF Indústria*, 850 F.3d at 75. Accordingly, and as set forth above, the Court specifies that the Award is a foreign award (*i.e.*, an award made outside the United States for which enforcement is sought in the United States), that the Court is sitting in secondary jurisdiction over the Award, and that the action therefore seeks enforcement of a foreign arbitral award under the Court's secondary jurisdiction.

**B. Standard Applicable to an Unopposed Petition**

When a petition to enforce a foreign arbitral award is unopposed—as is the case here—a district court treats the petition as akin to an unopposed motion for summary judgment and determines whether the petitioner is entitled to judgment as a matter of law based on undisputed material facts. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107–10 (2d Cir. 2006). "It is the [petitioner's] burden to show that no genuine factual dispute exists," and the Court "must resolve all ambiguities and draw all reasonable inferences in the [respondent's] favor." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

A court evaluating an unopposed petition to enforce a foreign arbitral award "is not relieved of its duty to decide whether the [petitioner] is entitled to judgment as a matter of law." *Id.* at 242. "If the evidence submitted in support of the [petition] does not meet the [petitioner's] burden of production, then [the petition] must be denied even if no opposing evidentiary matter is presented." *Id.* at 244 (cleaned up). "Moreover, in determining whether the [petitioner] has met this burden of showing the absence of a genuine issue" of fact, "the district court may not rely solely on the [petitioner's] statement of undisputed facts" and "must be satisfied that the citation to evidence in the record supports the assertion." *Id.* In other words, "the Court must conduct its own review of the record to determine that no issue of material fact remains." *Seascape Shipping & Trading LLC v. Metalex 2000 S.A.*, 20-cv-9620, 2021 WL 1051596, at *1 (S.D.N.Y. Mar. 19, 2021).

## II. ANALYSIS

Based on both its own review of the Award and Capcorp's submissions, the Court finds that none of the Panama Convention's enumerated defenses to enforcement of the Award apply here. There is no indication that any party to the arbitration was subject to any incapacity or that the arbitration agreement was invalid. All the parties to the arbitration participated at length in the arbitration, as reflected in the Award itself, and there is no indication that the arbitration was not carried out in accordance with the procedures contemplated in the arbitration agreement. There is no indication that the dispute that was the subject of the arbitration fell outside the broad arbitration provision in the parties' agreement—indeed, the parties expressly consented to the arbitration that led to the Award at issue in this petition. (*See* Dkt. No. 7-4 (Arbitration Agreement).) The Award has not been annulled or suspended in Brazil, and there is no evidence or suggestion that the Award is contrary to the public policy of the United States or cannot be resolved by arbitration under United States law. Accordingly, the Court will enforce the Award.

Following the arbitral tribunal's final clarification of the Award, the operative provisions of the Award setting forth the amounts to which Capcorp is entitled from TFS are found in paragraph 90 of the tribunal's March 11, 2025 Decision on the New Request for Clarification from the Respondents. (*See* Dkt. No. 7-3 at 33–37.) These amounts are set forth in Brazilian reals (BRL) rather that U.S. dollars (USD). (*See id.*)

American courts rarely enter judgments in a foreign currency. *See Competex, S.A. v. Labow*, 783 F.2d 333, 337 (2d Cir. 1986); *see also Yukos Cap. S.A.R.L. v. Samareneftegaz*, 592 F. App'x 8, 12 (2d Cir. 2014) (summary order) (citing *Competex*, 783 F.2d at 337). To convert TFS's liability from Brazilian reals to U.S. dollars, the Court must determine the appropriate exchange rate, which in turn requires selecting a "conversion date." When a cause of action arises under domestic law, the exchange rate prevailing on the date the cause of action accrued is used to convert an obligation denominated in foreign currency to U.S. dollars. *See Hicks v. Guinness*, 269 U.S. 71, 80–81 (1925); *Yukos*, 592 F. App'x at 12 (citing *Hicks*, 269 U.S. at 80–81). Capcorp's petition to enforce the Award is made pursuant to the FAA, which incorporates the Panama Convention. In a summary order, the Second Circuit has determined that, in the context of a petition to confirm a nondomestic arbitral award pursuant to the New York Convention, the proper conversion date is the date of the arbitral award itself because the petition to confirm arises under domestic law—the FAA—and the cause of action to confirm the award accrues when the award is made. *Yukos*, 592 F. App'x at 12. That reasoning applies equally in the context of a petition to enforce a foreign arbitral award pursuant to the Panama Convention. *See Esso Expl.*, 40 F.4th at 62 n.2.

Applying the reasoning of *Yukos*, the Court determines that the proper conversion date is the date Capcorp's right to petition to enforce the Award accrued— March 27, 2025, when the Award became final. Capcorp is directed to apply the appropriate prevailing exchange rate to the Award as of March 27, 2025.

In addition, Capcorp's petition does not set forth the source or calculation of the principal and accrued interest figures listed in the petition. Capcorp is directed to set forth how it calculated each principal amount listed in the petition as well as the bases for its interest calculations and the bases for any adjustments made pursuant to the Award.

Finally, the Court notes that Capcorp's petition requests that the Court award Capcorp its attorneys' fees and costs incurred in connection with this proceeding. (Dkt. No. 1 ¶ 14(c).) Capcorp has not provided the Court with a legal justification for an award of attorneys' fees, and neither Capcorp's motion for default judgment (Dkt. No. 16) nor its motion for summary judgment (Dkt. No. 29) requests an award of the attorneys' fees that have arisen in the course of Capcorp attempting to enforce the Award. Accordingly, the Court declines to award attorneys' fees to Capcorp in connection with this enforcement proceeding.

## III. Conclusion

For the reasons set forth above, the Court finds that enforcement of the Award is appropriate but requires further clarification from Capcorp before it is able to enter judgment. Capcorp shall file a document setting forth TFS's liabilities as described in this Opinion and Order within fourteen days.

Dated: New York, New York
August 7, 2026

SO ORDERED:

Sidney H. Stein, U.S.D.J.